We have two cases this morning. First is number 20-2493 United States v. Mitchell, Messrs. Goldberger and Zosmer. And welcome back, gentlemen. Thank you. Good to be with you. Thank you for joining us. Mr. Goldberger, whenever you're ready. May it please the court. My name is Peter Goldberger, and it's my privilege this morning to represent Tyrone Mitchell, who of course was the defendant below and is the appellant here. I'd like to reserve two of my 15 minutes for rebuttal. That's fine. Thank you. Obviously, my guess is we'll go over, but Judge Roth does have an appointment today. So I won't be as usually long-winded as I am in the past. So we'll try to stay semi on time. Go ahead. Yes. Yes, my online arguments seem to have run on time, unlike standing at the podium. Judge Diamond sentenced Mr. Mitchell on remand from this court to serve 895 months of imprisonment, which is nearly 75 years. And he's now 54? Mr. Mitchell at that time was 54 years old. So Judge Diamond re-sentenced him. That's right. Yes. Yeah. The question really for this comes down to what is the legal status of a sentence that previously has been fully vacated? And as you know, there are circuits going both ways. What is the reason that you suggest that if it's fully vacated, that the First Step Act under 403B does apply? Well, it's best, obviously, we start with two areas of law. One, of course, is the statutory language. And the other is the longstanding law of appellate jurisprudence, appellate mandates. And the two are in sync. So the section of the Sentencing Reform Act that talks about re-sentencing on remand is Section 3742G. And that statute makes clear, I think, that Congress looking at this particular problem, which Section 403B of the First Step Act does not, understood that a sentencing would proceed, a re-sentencing after an appeal would proceed like an original sentencing. It says that the judge shall proceed under Section 3553, except as otherwise directed by the mandate of the Court of Appeals. Right. And G1 says that the judge shall apply the guidelines that were in effect on the date of the previous sentencing of the defendant prior to the appeal. Now that's subject to, you know, however the First Step Act changes those guidelines, but it's pegging the default law for this re-sentencing to what the law was at the original sentencing. I would read that. That was exactly the next thing I was going to say. And I think I would read that quite differently. That is, what it tells us is that the guidelines are to be, that were in effect at the time of the original sentencing, are to be used. Right. Unless the ex post facto clause dictates otherwise. Right. But not anything else. It's by speaking to that and nothing else. But I want to make a more basic point, which is there was a first sentencing. And then there's a vacant. And then it goes back for a second sentencing. But the second sentencing doesn't completely ignore the fact of the first sentencing. We're still pegging the default background law to what the law was the first time. We don't act as if the first sentencing had never happened, except as otherwise specifically prescribed. One is this unusual rule that was amended into the Sentencing Reform Act to use the guidelines. Where does that come as the background rule rather than the exception? I mean, you can point to the first step back as creating an exception, certainly, but how does that become the default rule? The clean slate principle that's articulated in so many appellate cases and for the use in the case purposes. Yes, yes. But in Murphy, we interpreted Easter as joining the quote, clear consensus among our sister circuits that a first step resentencing is not a let's start all over. Judge Ambrose wrote that. Judge Roth joined it. So it's not a let's start all over. Doesn't that mean that we take some things as given? We don't refine all of the facts. For example, a judge may have some discretion or freedom to. But in Easter, we said, you don't have to have the defendant present. There are a number of things we do the second time around from the first time around. Well, the defendant would have the right to file new objections to the pre-sentence report, ask that new facts be found. The government might or might not, depending on how the one bite at the apple rule was applied. So the defendant can ask for these things. But if a defendant is not present at the first sentencing, it's just an error. But the defendant has to ask for it at the second one. The defendant can ask that certain facts be refound. But if the defendant doesn't do that, it's completely appropriate for the district court just to rely on the findings from that were made the first time. So it's not as if the first sentencing didn't happen. It happened. And it sets a different background and requires the defendant to ask or move for these things. I think the judge the sentencing judge has discretion unless the terms of the mandate clearly require otherwise to call for a new pre-sentence investigation or not. That's been my observation. And I don't disagree with that. The findings of fact begin with the pre-sentence investigation by the probation department. Yeah. So let's talk about the statutory language. Yes. The first sentence is a sentence. 403B or 403? We're starting with 403A. The sentence before our court's vacator. Oh, I'm sorry. Is a sentence. The sentence of imprisonment. I thought we were talking grammatically sentence. I misunderstood. Is a criminal sentence. Yes. I got you. I got you. I'm sorry. No, I wasn't clear. Fair point. And that if we had asked Judge Diamond, you know, three minutes after that, we would all have said that sentence has been imposed at that point. Now, I want to I want to say there's a distinct question about the vacator, but before it got up to our court, there's no question that a sentence has been imposed. Am I right? Am I right? That the core meaning here is does the vacator change what otherwise we all agreed is a sentence has been imposed. Well, the vacator acts on the judgment, not on a sentence precisely. But yes, you're saying you're saying the vacator acts on the judgment. So and I mean, I think that's the way that Avila's and Hodge read what a sentence is. It doesn't have to be a final sentence. It doesn't have to be a sentence. It's not the sentence or the final sentence. And the sentence has been imposed in Avila's and Hodge. We said it's the act of the district court, it's not the act of the Court of Appeals. So if I'm right, and tell me if I'm not right, then the case comes down to how we understand what the vacator does to the judgment. Yeah. Well, first of all, we this, we have to read something into 403b. It's not just a sentence has been imposed, a sentence has been imposed on this count for this offense, we've already added words to make sense of it. It doesn't tell us everything that we need to know just reading the words of the statute. And in fact, oddly, that very same grammatical sentence of the statute says shall apply to any offense that was committed. But of course, it doesn't mean any offense that was committed. It means any offense under section 924 C. So we're already we're interpreting and adding words to make sense of what it was clear that the drafters meant by this language. And one of the things that I think we can infer, and this is where I agree with the Seventh Circuit majority on bank, is that a hyper literal reading, taking textualism, if you will, to an extreme on this language, just as pure language doesn't get you to the to a correct understanding of the intent and meaning of the statute. But that's the way I mean, what I want to understand is what's different, because the way that we approached it in Avila's and Hodge was a pretty literal approach. So where, how do you read? How, how do you, how should we best read what it means for there to be a sentence that's been imposed? Or how do we, how should we read the vacator? The vacator. I'm sorry, was that, was I echoing or was someone else? You echoed. Oh, sorry. The vacator vacates the judgment and remands the case for a new sentencing. It treats the the sentence as if it had not been imposed for this purpose. It puts the defendant in the position that Congress in the category of people where Congress drew what is clearly a compromise line between the default rule against retroactive application of new criminal penalties in section 109 and a fully retroactive provision which could be used in and of itself as a justification for a post-conviction attack on a 10-year-old sentence under this statute. And Congress picked a fair middle ground. It's interesting that you use that phrase as if. I'm trying to remember which, but I thought, I thought a different provision of the First Step Act was it 404b uses the as if language. I mean, it's used elsewhere in the First Step Act, but they don't use it in this section. That's true. So I think it's a little odd to read as if in here when the very same bill uses it in a different retroactivity provision. I would agree with you were this were the phenomenon of a resentencing after a vacator of the first sentence an ordinary case, but this is an unusual and rare instance. A circumstance that you could not assume Congress would anticipate and write a specific provision for or write its words to anticipate. And so the question is what into my mind is what was Congress intending for people like was someone like Mr. Mitchell like for these purposes like someone who was sentenced 10 years ago and is trying to take advantage of the First Step Act collaterally or is he like someone who for one reason or another his sentence was delayed through litigation or whatever and is coming up to be sentenced. So we have a potentially unanticipated situation here. Yeah, and I guess some of it depends on the background rule. Now in many criminal cases we approach that background rule through the rule of lenity, but shouldn't we read Dorsey as suggesting a different background rule? Dorsey says the Supreme Court says look you know if Congress wants to make this retroactive it's got to say it. You know at common law traditionally changes in criminal penalties are prospective. We respect finality. So if we're going to upset the apple cart for other sentences we're going to make it clear when they kick in already. Now Dorsey is clearly the most similar. Right Dorsey is similar and so for many of these provisions some of the provisions key it to finality. There are parts like 403a that key it to whether it's a final sentence, but we said in Hodge 403b doesn't say the sentence has to be final the sentence just has to be imposed. So if the Dorsey background principle is we leave sentences alone unless we're told not to leave them alone, then how do you overcome it here with this general appeal to intent? Well first I would start by saying that Hodge is very weak precedent because it is so overbroad relative to the case before the panel at that time and the entire discussion that we're focusing on here in relation to Mr. Mitchell's case was entirely unnecessary to the decision. It was an alternative holding you know and a panel has a decision as to how broadly or narrowly to write but it was it was if this was part of the reasoning supporting that alternative holding and of course the panel carved out from its holding our precise situation but its reasoning still deserves our respect. What are we supposed to with that reason? Compare it to Dorsey and to a careful focus on people in the few people that are in Mr. Mitchell's position and ask whether he is one of the people who Congress intended to be just short of being saved from falling off this cliff. It's there's going to be a cliff one way or another. There's a date before which and after which the rule doesn't apply for sure and the difference for him is between a sentence that he can survive a 25-year sentence potentially the shortest possible sentence and the 65 or 75-year sentence. Yeah look the equities have some play here. A lot of people think these sentences are too long. That's definitely a fair point to make but when you talk about cliffs what I think of is Hodge saying look there's going to be a cliff somewhere and we're concerned about the cliff between the person who just happens to get a vacator but not a vacator in this situation. The person who happens to have the resentencing and the person who doesn't so it seems arbitrary. Now maybe you can distinguish Hodge a different way. I mean Hodge it was on non-924c counts rather than 924c but the particular cliff that Hodge was more concerned about was two different co-defendants and one of them happens to have a case sent back and it seemed arbitrary to the panel and Hodge to create that cliff. So you've got a cliff to point to but it's easy enough. You can hypothesize an exactly parallel case for Mr. Mitchell. I did in my brief where one co-defendant comes up for an original sentencing at a different time than another. It's just I don't think the imagining the scenario of unfairness gets you anywhere because the world is full of strange stories and you can make one up for any. So if the cliff doesn't cut either direction is you're saying Congress meant it or intended it to apply to him ultimately based on a kind of lenity these sentences generally are too high principle and then how does that fit with Dorsey and preserving Fennell? I'm not Fennell but just repose of imposed sentences. Well we do have a clue from the title of the section which is that Congress described it however oddly as a clarification which does put the weight of intent behind saying we want this to be carried out and I admit I'm reading tea leaves here but when I see Congress saying clarification and then choosing this middle ground not but not the 109 rule but the middle ground of for people who happen to be coming up for sentencing anyway Mr. Mitchell is more like those people in terms of congressional what we seem to think and what I think Congress was trying to intend by this part partial reform and I do I am well over my time and I do want to be sure to say that I would hope the court will look at the in any event the the last two points of my brief the failure to give a reason and the substantive reasonableness of the choice that was made for the length of this on the other point I do want to ask is the retroactivity argument for you know the counts 1 and 15 that's just that's going to stand or fall with this one right yes that's the same language we're looking that's right and because it only applies to two of the four accounts like that I I'm not I don't intend to use any of my time on on my second or third arguments because they they don't affect the package my my final question is before we go to Mr. Zosmer how how ambiguous does the statute need to be for the rule of lenity to come out because the cases that we've looked at really don't even though they to go your way of uh presidential and bank opinion and not presidential opinion of the fourth circuit which I think I suspect may have started off as a presidential opinion versus the sixth circuit of jackson's but how ambiguous must the statute be before the rule of lenity comes into play favorite question of mine I mean there are two conflicting lines of supreme court authority that do not refer to one another I'm sure Judge Beavis knows this very well having done a lot of work on on lenity one of which talks about grievous ambiguity and the other of which does not um and and it's not that one has superseded the other but the I will say that the grievous ambiguity cases come from nowhere the earliest uh cases that mention it I think are all by Chief Justice Rehnquist and the the term comes comes into some of those cases without prior authority at all and are not consistent with the grounding of the rule of lenity which um going back decades and decades before the the Rehnquist court uh so the if if the ordinary I think the right rule is that the ordinary tools of statutory construction don't give the court confidence that you have reached the intended meaning of the statute you can use a tiebreaker rule like lenity I think constitutional avoidance is another such rule but lenity comes into play at that point for the two reasons that the rule of lenity exists to protect the separation of powers to prevent overreaching by judges into the legislative realm and to protect the due then it is clear uh the legislature intended sorry for that very long answer to that question but I'm just not sure if due process notice applies where he he clearly had notice if the first step back hadn't come along this really then comes down to a more a separation of powers of what what did congress intend or clearly see yes fair enough questions no I don't okay then we'll get Mr. Zosmer up and then Mr. Goldberger we'll get you back on rebuttal great thank you very much good morning your honor may I please the court Robert Zosmer on behalf of the government very nice to see all of you it looks like you're doing well I hope that's the case the uh the question presented here with regard to section 403 is a straightforward question of statutory interpretation I don't take a great deal of pleasure in saying this given the facts of the case but it's not a particularly difficult question of statutory interpretation we always start with the statutory language if it wasn't difficult why do court why do really bright people one court having 12 people in bank and you got six other people in other courts so you got uh 18 people going different ways well first of all we have no court going a different way in this particular situation where a sentence was in existence when the first step back was passed and then was vacated later but I do agree that the Uriarte case does have language that pushes against our position here I think it's motivated and I don't question this at all by the really draconian situation that we face but this this situation is really not unique to Mr. Mitchell and the real concern and I'm happy to whose sentences were not vacated and are in this situation of serving sentences that are dramatically longer than would be imposed under current law and the reason they are is because the decision that Congress made the fundamentally what we have here and I know your honors know this well fundamentally what we have is is a decision that is committed to Congress as to whether to in section 109 which says it's not retroactive that as a general rule if Congress changes a criminal penalty that change does not apply retroactively and that there needs to be an express statement if that rule is not to be followed now and so that's the key question here and we're given this very clear language in looking back just over the last 10 years we have different examples of how Congress approaches this problem the first time it comes up in recent history is when it passes the Fair Sentencing Act in 2010 which as you know very very well changes the penalties for crack cocaine offenses and at that time the Supreme Court in Dorsey really endorsing the view of this circuit the the court in Dorsey finds a particular declaration by Congress what it it looks it says look we know the default principle is that the change doesn't apply retroactively but what rules the day in Dorsey is that the Fair Sentencing Act said we direct the Sentencing Commission to immediately change its guidelines and so the court read that as an express statement that the Fair Sentencing Act should apply at least to those people who had not yet been sentenced and so it enforces the strict rule against anybody who had been sentenced before the Fair Sentencing Act did not apply to them but it did apply to the people who are sentenced afterwards then comes the First Step Act in 2018 with regard to that same provision the Fair Sentencing Act and now Congress takes a different tack in section 404 it says people are eligible for reconsideration of their sentence as if the Fair Sentencing Act was in effect at the time now this court has had many opportunities to address that and what it has made clear is that as if means is that we take the Fair Sentencing Act and its provisions regarding crack sensing we insert them into the previous assessment but everything else stays the same that that's default rule still exists with regard to sections 401 and 403 we have yet another model and again this is all up to Congress and Congress gives this very clear language that says it doesn't apply retroactively if a sentence for the offense has not been imposed now I know there's an interesting legal question here as to what is vacating a sentence mean and what ordinary impact does that have but this language is not focused on that at all it's a very clear statement that if someone has had a sentence imposed that this act is not applying retroactively the default provision is in existence with regard to those people I take no pleasure in saying this there's no question that Mr. Mitchell's sentence would be significantly lower he is among as my good friend Mr. Goldberger says he is among a very small number of people it's the only case in this circuit that I know of that's in this situation where his sentence was vacated later on appeal because of people's sentences don't get vacated later on appeal but he's in a group in an extremely large group of people who who had a sentence imposed before the first step back when it was applied under section 401 there are people serving life sentences that are not being reduced under section 403 there are people serving hundred year sentences that are not being reduced this is a matter for congress they made their decision in the first step back in 401 and 403 there's actually a bill pending right now it's called the first step act implementation act it was introduced by senator Durbin and I believe it's been reported out of the senate judiciary committee that would make a retroactive section 401 and 403 and if I recall correctly the first implementation act simply copies that language the as if language from 404 and thus it'll have the same effect going forward should that happen should that be passed I think you can tell from my language you will hear no complaint from me and I'm sure many of my colleagues that we will take the time necessary to go back and address these sentences but again what we're dealing here with I don't have much to add to what has been said by many other courts to and certainly by by judge smith and and his colleagues in the hodge case the question will become what is the legal status of a sentence that has been fully vacated is it a legal nullity or is it still quote a sentence close quote um it's with all respect judge ambrose I just don't think it's the right question for this case the legal effect certainly of a null of a vacated sentence is that sentence is no longer enforceable it must be reimposed by a district court but again what we're dealing here with is congress is not making a declaration here as to the effect of vacated sentences it's making a declaration as to yeah you're relying on the statutory interpretation and yet uh nine to three on the seventh circuit nine judges in uriarte are saying that 403b is not ambiguous and i'm sitting there well maybe that's the case that's what nine say it's not ambiguous they give other reasons and you're saying it's not ambiguous must a statute be before the rule of lenity comes into play well two things your honor first in uriarte the situation is that a sentence was imposed and then vacated before the first step act was passed and so at the time the first step act comes into existence that person is not facing a sentence I think there could still be an argument as to whether it's correct that that you can say no sentence was ever imposed but it's a very different situation from what we have here and that's what my question my question on that is does it matter uh well isn't it isn't it a vacated sentence a legal nullity I mean pepper says in the slightest wipe clean well the sixth circuit has addressed both sides of the coin and the sixth circuit in jackson having earlier held that in the uriarte situation that this does not apply right this does apply retroactively that in our situation where sentence is in existence but vacated after the first step act uh it does not and I think it's I think it may have been judge bear in descent I acknowledge in uriarte but but someone said correctly it was her dissent yes right correctly said that sure it may be a nullity going forward it may wipe the slate clean going forward but it's not a time machine it doesn't just wipe out the historic fact that a sentence was imposed looking at the language with respect to your honor's question regarding the rule of lenity uh I'm not as quick as Mr. Goldberger to say that we can ignore the numerous supreme court decisions that have told us that there has to be a grievous ambiguity uh but I think we do have common ground and understanding that the rule of lenity does not simply reflexively apply that there has to be after using old tools of statutory interpretation there has to be an ambiguity and in this case in considering excuse me in considering the rule of lenity can we consider the purpose of the statute uh yeah yes certainly uh because again we have to consider all the rules of statutory interpretation and that certainly judge roth is one of them but my submission here respectfully is that we don't get past the first rule of statutory interpretation which is to look at the plain language of the statute and that's what's controlling and also going back and looking at the plain language of the statute and considering the object of the statute is the plain language of the statute really plain well the the object and this is something I've spoken of earlier the object it's clearly not to apply this statute generally retroactively that's really the object is not to apply uh sentences that are so long that there's no possibility of of the prisoner ever completing the sentence right I mean we have here two very clear objects from congress one is to significantly ameliorate the penalties going forward and earlier uh mr mitchell unfortunately falls into that first group and not into the second group that's the decision that congress made he actually I could get into the math here I'm sure the the court can do it as well he actually is not one of the more prejudiced people because he's he's going to be 56 years old this month and if if he were sentenced even under current law based on judge diamond's view of the case and imposing the guideline maximum he's looking at an effective life sentence regardless of it no matter how many counts there are no matter uh no matter which law you're applying but there are like I said there are thousands of other people where congress made a decision getting back to the key point here uh judge roth I'll allude to the the Avila's decision that I haven't mentioned which involves section 401 judge roth of course you were on that panel uh and and what judge Rendell wrote there is that quote imposition and finality are two different concepts and I think that's the most straightforward answer I can give to the question that judge Ambrose has sensibly been pressing as to you know how does Vegator play into this it doesn't play into the very clear statutory language that congress used judge Beavis you have any questions on that issue do you want to address the uh interrogatories and instruction sure well that that issue your honor affects only one count it only affects count one count 15 or I believe it only affects count one which was the conspiracy charge and on that charge there was a 10-year mandatory there is also a 10-year mandatory as your honor on count 7 and count 15 and so the first answer is it really doesn't matter the it doesn't affect the guideline range it affects the 10-year mandatory and the court elected to impose a concurrent 235 month sentence on all non-924c counts uh it's subject to review for plain error there was no objection to the instructions at trial there was no there was actually no objection to the quantity finding of the jury on even on re-sentencing on the basis that Mr. Goldberger is now presenting uh the there was a totally different argument that was presented that the conspiracy quantity was wrong because uh it aggregated all of the offenses that's not what's being argued now what's being suggested now is that there was a mistake in the attribution instruction there wasn't for the reasons that we lay out in our brief uh but even if there was for numerous reasons we submit you can't show a reasonable probability that the jury would have reached a different finding had it been given additional instructions uh to suggest that Mr. Goldberger suggests in his brief that essentially the jury would have rejected Mr. Jenkins testimony the co-conspirator uh they didn't not only reject Mr. Jenkins testimony that was the key basis of to repeatedly week after week by thousands of dollars worth of cocaine from Mr. Mitchell often on credit uh there's simply no reason i think that any jury was going to find that less than 500 grams of cocaine was involved so there that's a long answer but it's count one it doesn't matter um and there really was no error one one final question that i have in connection with the section 841a offense if the first step act were to apply and that any incarceration from his supervised release violations are attributable to the this 1995 drug offense do we still need to remand so the district court can determine if the six weeks of custody in connection with the supervised release violation was in fact served as incarceration well well that would be one option um i mean this is yet again another issue that was not raised in the district court uh there was a very vague objection uh based on the series i think it's page 289 of the appendix this vague objection to using the eviction on the 15-year rule but no argument at all related to that violation of supervised release which is really what triggers the 15-year rule being satisfied here if section 401 were to apply retroactively which of course we we say it does not the this is completely an issue of first impression both legally and factually uh there's no court decision that i'm aware of that addresses the effect of a violation of supervised release sentence with regard to the 15-year provision and there's no factual determination in this case because the issue just wasn't raised so yes i guess this court would have the option of remanding but but we don't believe that that's appropriate uh uh and again it doesn't have a material impact on the sentence all right thank you any further questions of my colleagues no no all right thank you very much mrs osmer christopher goldberger on rebuttal so very briefly on the section 851 uh issue about the 15-year rule um it was raised i've cited under 841 i'm sorry 851 851 is the notice provision which affects the extent of the statute of the penalty under 841 so it's both it's both um but i've cited in the brief the place where it was raised in the record it was raised sufficiently the government failed to offer proof this is a clear instance in which the one bite at the apple rule would apply there would be a remand to reduce the sentence not a remand for the government to reopen and offer new evidence but more important on the um on the 403b issue first as to the implementation act i'm not sure what point mr osmer is making uh certainly the court should not wait for congress but um in any event who knows what if anything congress will accomplish on any on any subject but um if if the if that provision were passed i think people would have the same opportunity to file a motion and in the judge's discretion obtain uh a reduction it would not be a de novo sentencing as mr mitchell is entitled to so it wouldn't even be the same relief um but the more important point is the one that judge roth raised which is the purpose of the statute the government has reiterated here um the tautological argument that they made in their brief um that the object of the sentence is to restrict the extent of retroactivity that's not the object of the sentence i don't think that's quite fair i think mr zell zimmer's making the point that no statute pursues one object at all costs it's a compromise it's a trade-off as i understand it the first step back was a bipartisan act and one thing you do to build a bipartisan coalition to build bring up all lines say okay we'll give people a break going forward and 404b for crack sentences and we'll give them something going backwards but we're not going to upset the apple for all the people who are currently serving so i think this point is it was a measured it was we'll give some benefit but not an unlimited benefit to everybody and that's i mean that's consistent with the way we read it in avilas and hotch yes and i think that's what i said in my in my principal argument which is that there's a compromise and mr mitchell is one of those who is on the side of the line in the unusual subcategory i accept that it might even be a virtually unique category of people who are just on the side of the line of those who should be viewed as a going forward not a looking backward uh case so with that i i ask that you reverse and remand for resentencing i reiterate my suggestion that if there's going to be a second remand it'd be to a different judge um who would be open to uh imposing a sentence who might be open to imposing a sentence where mr mitchell that's a very unusual could reach the end of the sentence wait a second mr goldberg we are pretty reluctant absent some demonstrable bias or the like is there any evidence of you know intemperate biased or appearance of bias in this that would justify that kind of rebuke to judge diamond here a bias is not required for a remand to another judge under it's not required but our practice it's it's a pretty unusual measure for us so why should we take that step i would view it not as a rebuke at all but as a protection against being put in the difficult and embarrassing position um that he would be in on a third resentencing for the it's it protects the appearance of justice um and in i would focus here on my fourth argument that the complete failure to give any semblance of a reason no token uh compliance with the 35 51 c obligation reason for selecting a higher sentence the time has come for a new view i would push back on that i think judge diamond did give reasons uh saying about three reasons that i can think of at this at the sentencing as to why he believed despite the fact this man was 54 at the time that he was he was not going to quit he was just if he was back out on the street he'd be back at it uh this has been his career uh legal career i should say in terms of getting into trouble and uh he gave reasons now you can disagree with those no no that's those are reasons for a harsh sentence the question is why the higher sentence within the wide guideline range the whole guideline range is harsh the question what he did not address at all is the special reasons requirement that this statute imposes for particularly long sentences where the judge don't we have this presumption of reasonableness for within range sentences is the same level of explanation required third circuit does not have a presumption of reasonableness for within range sentences we rejected that on bank at the very beginning of this line of authority think of a single case within guidelines in the third circuit where a court has there are a couple cases okay all right anyways i thank you for your time all right thank you thank you both both of you it's a real privilege to have both of you back before us i would ask that a transcript be prepared of this oral argument and mr zosmer would it be okay if the government picked up the tab for that we'll be happy to all right thank you very much gentlemen again a pleasure thank you